Jeremy E. Deutsch
Krista E. Bolles
Kathryn A. Johnson (pro hac vice)
51 West 52nd Street
New York, NY 10019

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARSH & MCLENNAN AGENCY, LLC, , <br><br> Plaintiff, <br><br> v. <br><br> CHARLES BAXTER SOUTHERN, III, <br><br> Defendants. | No. 1:25-CV-9080 (JLR) <br><br><br> **ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## CHARLES BAXTER SOUTHERN'S MOTION TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT/INTRODUCTION ...................................................................1

LEGAL STANDARD....................................................................................................................2

ARGUMENT ................................................................................................................................4

I.    The Fifth Cause of Action for Trade Secret Misappropriation Under the DTSA
      Should be Dismissed..........................................................................................................4

      A     Plaintiff Fails to Appropriately Identify Any Trade Secrets....................................4

II.   This Court Lacks Subject Matter Jurisdiction ..................................................................14

      A     Plaintiff Fails to Allege Subject Matter Jurisdiction Under the DTSA .................14

      B     State Law Claims Predominate and There is No Reason for this Court to
            Maintain Supplemental Jurisdiction ......................................................................17

III.  The Claims for Breach of Duty of Loyalty, and Unfair Competition Should Be
      Dismissed.........................................................................................................................19

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Seven, LLC v. Martinez,*
2021 WL 276654 (S.D.N.Y. Jan. 26, 2021) ...........................................................................13

*Agudelo v. Recovo Mortg. Mgmt. LLC,*
2025 WL 1674486 (E.D.N.Y. June 13, 2025) ..........................................................................3

*Aira Jewels, LLC v. Mondrian Collection, LLC,*
2024 WL 1255798 (S.D.N.Y. Mar. 25, 2024) ................................................................. *passim*

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................................................3

*AutoExpo Ent. Inc. v. Elyahou,*
2025 WL 2637493 (E.D.N.Y. Sept. 12, 2025) ...................................................................6, 13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).................................................................................................................3

*Brown v. HP Inc.,*
2019 WL 5551864 (S.D.N.Y. Oct. 25, 2019) .........................................................................14

*Chenming Holdings (Hong Kong) Ltd. v. Sklarov,*
2025 WL 2695281 (S.D.N.Y. Sept. 22, 2025)........................................................................14

*Converged Compliance Sols., Inc. v. XOP Networks, Inc.,*
2024 WL 4665114 (S.D.N.Y. Sept. 25, 2024).............................................................8, 10, 20

*Dewitt Stern Grp. v. Eisenberg,*
257 F. Supp. 3d 542 (S.D.N.Y. 2017).....................................................................................12

*Dunlop v. City of New York,*
2006 WL 2853972 (S.D.N.Y. 2006)........................................................................................18

*Elsevier Inc. v. Dr. Evidence, LLC,*
2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) .............................................................................7

*Escoffier v. MFY Legal Servs.,*
2015 WL 221048 (S.D.N.Y. Jan. 15, 2015) .............................................................................2

*Garvey v. Face of Beauty, LLC,*
634 F. Supp. 3d 84 (S.D.N.Y. 2022)..................................................................................10, 11

*GMH Cap. Partners v. Fitts*,
2025 WL 950674 (S.D.N.Y. Mar. 28, 2025) ..............................................................9, 10, 11

*Iacovacci v. Brevet Holdings, LLC*,
437 F. Supp. 3d 367 (S.D.N.Y. 2020).......................................................................................4

*Intrepid Fin. Partners, LLC v. Fernandez*,
2020 WL 7774478 (S.D.N.Y. Dec. 30, 2020) ......................................................................6, 7

*Lawrence v. NYC Med. Prac., P.C.*,
2019 WL 4194576 (S.D.N.Y. Sept. 3, 2019)............................................................................5

*McCarthy v. Butler Tibbetts, LLC*,
2021 WL 5450270 (S.D.N.Y. November 19, 2021).........................................................15, 16

*Nachshen v. 53-55 W. 21st Owner LLC*,
2022 WL 704782 (S.D.N.Y. Mar. 9, 2022) ............................................................................16

*Nano Dimension Ltd. v. Murchinson Ltd.*,
681 F. Supp. 3d 168 (S.D.N.Y. 2023)....................................................................................16

*Oneida Indian Nation v. Madison County*,
665 F.3d 408 (2d Cir. 2011)....................................................................................................18

*Ortiz v. Consol. Edison Co. of N.Y., Inc.*,
2025 WL 2717309 (S.D.N.Y. Sept. 24, 2025)..........................................................................4

*Padula v. Dinsmore*,
2025 WL 950722 (D. Conn. Mar. 28, 2025) ..........................................................................16

*Patrick Cap. Markets, LLC v. Ascend Real Est. Partners, L.P.*,
2022 WL 294638 (S.D.N.Y. Feb. 1, 2022)..............................................................................16

*Pauwels v. Deloitte LLP*,
2020 WL 818742 (S.D.N.Y. Feb. 19, 2020)...........................................................................11

*People v. Thain*,
874 N.Y.S.2d 896 (Sup. Ct. N.Y. Co. 2009) ..........................................................................13

*Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*,
2025 WL 1827274 (S.D.N.Y. July 2, 2025) .........................................................................9, 10

*Sapir v. Rosen*,
2021 WL 4482277 (S.D.N.Y. Sept. 30, 2021)................................................................ *passim*

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*,
68 F.4th 792 (2d Cir. 2023) ......................................................................................................5

4897-5096-2824\1

*UBS Sec. LLC v. Dondero*,
   705 F. Supp. 3d 156 (S.D.N.Y. 2023)..........................................................................................19

*United Mine Workers of America v. Gibbs*,
   383 U.S. 715 (1966)..........................................................................................................................18

*United States Liab. Ins. Co. v. M Remodeling Corp.*,
   444 F. Supp. 3d 408 (E.D.N.Y. 2020) ...........................................................................................15

*Wynston Hill Cap., LLC v. Crane*,
   628 F. Supp. 3d 540 (S.D.N.Y. 2022).................................................................................14, 15, 16

*Yong Qin Luo v. Mikel*,
   625 F.3d 772 (2d Cir. 2010).............................................................................................................14

*Zabit v. Brandometry, LLC*,
   540 F. Supp. 3d 412 (S.D.N.Y. 2021)...............................................................................................5

**Statutes**

18 U.S.C. § 1836...........................................................................................................................1, 4

28 U.S.C. § 1331...............................................................................................................................1

28 U.S.C. § 1367...............................................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 12(b)(1).................................................................................................................1, 2

Fed. R. Civ. P. 12(b)(6).................................................................................................................1, 3

Defendant Charles Baxter Southern ("Southern" and/or "Defendant") submits this memorandum of law in support of his Motion to Dismiss Plaintiff Marsh & McLennan Agency, LLC's ("Marsh" and/or "Plaintiff") Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT/INTRODUCTION

This is yet another one of an expanding series of complaints filed by Plaintiff and its affiliates after a group of their former employees left to take better opportunities with Howden. The Complaint against Southern sets forth much sound and fury but ultimately signifies next to nothing and specifies even less. The Complaint is conclusory, and ultimately, fails to allege a proper basis for this Court to exercise subject matter jurisdiction over Plaintiff's claims against Southern.

The claim for violation of Defend Trade Secrets Act ("DTSA") should be dismissed because it contains conclusory allegations that fail to establish causes of action for which relief can be granted. Specifically, the Fifth Cause of Action (Trade Secret Misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836) fails because the Complaint does not allege facts with the appropriate level of specificity to apprise Defendant of what trade secrets he supposedly misappropriated.

Plaintiff asserts that this Court has subject matter jurisdiction over this action on two bases: (1) federal question jurisdiction pursuant to 28 U.S.C. § 1331 arising from the DTSA claim (Complaint ¶ 11); and diversity jurisdiction arising under 28 U.S.C. § 1331 (Complaint ¶ 10). Plaintiff also asserts supplemental jurisdiction for its state law claims pursuant to 28 U.S.C. § 1367 (Complaint ¶ 10). However, the DTSA claim is infirm and should be dismissed and so there is no basis for federal question jurisdiction. Likewise, Plaintiff fails to allege the existence of complete diversity and so there is no diversity jurisdiction. Once those two grounds are removed,

there is no basis for this Court to have subject matter jurisdiction over this action, and the remaining pendant state law claims against Defendant should also be dismissed.

Additionally, many of Plaintiff's other claims against the Defendant are fatally flawed and should be dismissed for failure to state a claim upon which relief can be granted. For example, the Sixth Cause of Action (Breach of Loyalty) (Complaint ¶¶ 137-47), and Seventh Cause of Action (Unfair Competition) (Complaint ¶¶ 148-54) should be dismissed because they are duplicative of the breaches of contract claims.

While Plaintiff would have the Court believe that Southern has misappropriated and used Plaintiff's purported trade secrets to take customers and solicit Plaintiff's employees, any actual detail about the alleged activities of the Defendant is entirely absent. Indeed, lacking any facts concerning Southern, Plaintiff attempts to shift responsibility to Southern for actions taken by other former employees who left Plaintiff and as to whom Plaintiff lacked the foresight to enter into restrictive covenant agreements with (Complaint ¶ 51). The Complaint should be dismissed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires "the dismissal of a claim when a federal court lacks subject matter jurisdiction. 'Dismissal for lack of subject matter jurisdiction is proper when the district court lacks the statutory or constitutional power to adjudicate a case.' *Sokolowski v. Metro. Transp. Auth.,* 723 F.3d 187, 190 (2d Cir.2013) (internal quotation marks and citation omitted). In defending against a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the court's jurisdiction by a preponderance of the evidence. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)." *Escoffier v. MFY Legal Servs.*, 2015 WL 221048, at *1 (S.D.N.Y. Jan. 15, 2015).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are "merely consistent with" liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 556, 570. Pleadings that "are no more than conclusions . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading that offers merely "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to satisfy the pleading requirements. *Iqbal*, 556 U.S. at 678.

Moreover, a pleading may not rely on impermissible group pleading to set forth its allegations against multiple parties. *Agudelo v. Recovo Mortg. Mgmt. LLC*, 2025 WL 1674486, at *17 (E.D.N.Y. June 13, 2025) ("To sum up, the TAC is a trackless forest of allegations reflecting an effort to throw everything against the wall and see what sticks. Its pervasive inconsistencies and impermissible group pleading, particularly given the breadth of the new claims and parties, prevent the Moving Defendants from reasonably understanding the theories of liability asserted against them. It is not the job of the Moving Defendants or the Court to guess at the basis for the Plaintiffs' claims or to try to stitch together a coherent theory on the Plaintiffs' behalf." (citation modified)) ; *Ortiz v. Consol. Edison Co. of N.Y., Inc.*, 2025 WL 2717309, at *18 (S.D.N.Y. Sept.

24, 2025) ( "[I]t is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes and that Rule 8 is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it.").

**ARGUMENT**

**I.    The Fifth Cause of Action for Trade Secret Misappropriation
Under the DTSA Should be Dismissed**

Plaintiff's DTSA claim should be dismissed because: (1) Plaintiff fails to identify any trade secrets with the requisite level of particularity, and as such (2) Plaintiff fails to allege that the Defendant misappropriated any supposed trade secret.

The DTSA provides a federal claim for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "To state a claim for trade secret misappropriation under this statute, a plaintiff must plausibly allege that '(i) it possessed a trade secret, and (ii) the defendant misappropriated the trade secret.'" *Aira Jewels, LLC v. Mondrian Collection, LLC*, 2024 WL 1255798, at *2 (S.D.N.Y. Mar. 25, 2024) (quoting *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. 2022)). The elements required to prove a violation of the DTSA and trade secret misappropriation under New York common law are "fundamentally the same," and "[d]istrict courts often rely on cases discussing misappropriation under New York law to analyze DTSA claims." *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020).

**A  Plaintiff Fails to Appropriately Identify Any Trade Secrets**

A DTSA plaintiff "bears the burden of identifying a purported trade secret with sufficient specificity. The specificity requirement place[s] a defendant on notice of the bases for the claim being made against it, and allows a factfinder to determine whether certain information is, in fact,

4

a trade secret." *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 68 F.4th 792, 800–01 (2d Cir. 2023) (alternation in original) (internal quotation marks and citations omitted); *see also Aira Jewels*, 2024 WL 1255798, at *4 ("[A]lthough there is no heightened pleading requirement on actions brought under the DTSA, . . . district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." (alterations in original) (citation modified)).  While the plaintiff "has no obligation to reveal its secrets in the complaint simply to prove that they exist, that does not mean a party can get away with nebulous descriptions at the highest level of generality." *Aira Jewels*, 2024 WL 1255798, at *4 (internal quotations omitted); *see also Lawrence v. NYC Med. Prac., P.C.*,  2019 WL 4194576, at *5 (S.D.N.Y. Sept. 3, 2019) ("The general, unadorned allegations . . . do not sufficiently allege the existence of a trade secret protected by the DTSA."); *Zabit v. Brandometry, LLC,* 540 F. Supp. 3d 412, 422 (S.D.N.Y. 2021) ("While . . . the Second Circuit has [not] expressly required trade secrets to be identified with any particular degree of specificity, it is evident that a 'vague and indefinite' piece of information cannot be protected as a trade secret." (quoting *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 515 (S.D.N.Y. 2017)).  "[A] complaint that only claims general categories of information and data as trade secrets does not state a claim under the DTSA because it does not adequately put the defendant on sufficient notice of the contours of the claim for misappropriation." *Aira Jewels*, 2024 WL 1255798, at *4 (internal quotation marks and citations omitted).

Instead, "[t]he pleading standard set forth in *Twombly* and *Iqbal* requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value and measures taken to safeguard it to support an inference that

the information qualifies as a trade secret." *Id.* (quoting *Garvey v. Face of Beauty, LLC*, 634 F. Supp. 3d 84, 96 (S.D.N.Y. 2022) (internal quotation marks omitted)).

Plaintiff only alleges purported "trade secrets" in terms of general categories of data or information without any details to define them with sufficient specificity to allow the Court or the Defendant to determine whether an actual trade secret exists or not. At its most general and conclusory, the Complaint alleges that Southern misappropriated "MMA's trade secrets" (*see e.g.*, Complaint ¶¶ 125, 128). This is clearly insufficient. *AutoExpo Ent. Inc. v. Elyahou*, 2025 WL 2637493, at *12 (E.D.N.Y. Sept. 12, 2025) ("[T]he Court concludes that Plaintiffs fail to plausibly support the existence of a trade secret. Despite its lengthy allegations about Defendants' conduct, the [FAC] provides little more than one sentence specifying exactly what it claims to be trade secrets."); *Intrepid Fin. Partners, LLC v. Fernandez*, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) ("Here, Plaintiff merely references categories of information concerning its clients and ordinary business operations, and conclusorily alleges that such information is not readily available and affords Intrepid economic value such that it should be deemed a trade secret.").

Even at its most expansive, consisting of a single sentence in its 35-page Complaint, Plaintiff alleges that its purported "highly confidential and proprietary information, *including* MMA's trade secrets" (Complaint ¶ 22 (emphasis added)) include:

    a. "financial and business information related to MMA, McGriff and the Marine Team" (*id.*);

    b. "strategic plans" (*id.*);

    c. "non-public and commercially valuable client information" (*id.*);

d.  "databases compiling client and prospect information developed by MMA and McGriff over time and at considerable expense, including valuable non-public and historic client information" (*id.*);

e.  "information regarding the cost and revenue structure of client accounts and placements" (*id.*); and

f.  "compilations of personnel information for McGriff St. Louis and the Marine Team, including their salaries, bonuses, benefits, skill, qualifications, abilities, key relationships and team structures" (*id.*).

This too provides insufficient factual specificity to support a claim for violation of the DTSA. *Intrepid*, 2020 WL 7774478, at *4 ("[G]eneral and vague references to methods, processes, interpretation, programs, and data configuration protocols do not plausibly support the existence of a trade secret without supportive facts explaining, for example, how such strategies, techniques or models function."); *Elsevier Inc. v. Dr. Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) ("While it is not necessary to disclose every detail of an alleged trade secret in a complaint, DRE could have explained that its interpretation of data or process to assess the quality of evidence relies on a specific, proprietary algorithm developed at a certain time and which no one else owns. Alternatively, DRE could have filed a description of the alleged trade secrets under seal. While DRE need not plead the trade secret with specificity in the complaint, it must do more than simply list general categories of information. If that were not the case, then any claimant could survive a motion to dismiss a trade secrets claim with conclusory statements that simply restate the elements of a trade secret.") (citation modified).  Merely alleging vague and general descriptions in the hopes of hiding behind vague and general concepts does not suffice to state a viable claim under the DTSA:

7

> If Plaintiffs' strategy was to use as broad a vocabulary as possible in the hopes that some terminology would hit upon a trade secret definition, this strategy backfired, because it prevents Defendants and the Court from meaningfully discerning the protectability of specific documents or information and the uniqueness of their compilation. *See Sit-Up Ltd*., 2008 WL 463884, at *10.

> Presented with a haystack of items in which potential trade secrets may lurk, the Court declines Plaintiffs' invitation to go searching for the theoretical needle.

*Sapir v. Rosen*, 2021 WL 4482277, at *7 (S.D.N.Y. Sept. 30, 2021).

Most tellingly, and fatally for the DTSA claim, Plaintiff fails to differentiate, and repeatedly conflates, the concepts of trade secrets with that of mere confidential information which is fatal to being able to determine whether a particular item is a trade secret or not. *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, 2024 WL 4665114, at *9 (S.D.N.Y. Sept. 25, 2024) ("Plaintiff's insistence on labeling all the information purportedly shared with XOP Defendants as both "confidential" and "trade secrets" does not transmute the status of the information such that it receives trade secret protections); S*apir*, 2021 WL 4482277, at *6 (S.D.N.Y. Sept. 30, 2021) ("Plaintiffs' heavy reliance on the 'and/or' construction, conflates the concept of a trade secret with confidential information.") (internal citations and punctuation omitted).  Indeed, on no less than 25 separate occasions, the Complaint uses the conflated terms, "confidential information and trade secrets", "trade secrets and other confidential information", or "confidential and trade secret information".  (Complaint ¶¶ 1, 3, 16, 17, 18, 22, 27, 86, 88, 96, 98, 106-08, 119, 123, 127, 130, 133, 140-41, and 149).

The Complaint uses this conflated formulation because it is the same conflated formulation that is used in the various "Confidentiality Agreements" that Southern is alleged to have entered into with Plaintiff (Complaint ¶¶ 18, 25-27).  Indeed, the Complaint provides no reasonable way to differentiate between the vague and general categories asserted as "trade secrets" and the vague and general categories that the "Confidentiality Agreements" define as "Confidential Information

8

and Trade Secrets" and/or "Confidential Information or trade secrets". This is demonstrated by the Complaint's failure to differentiate between Plaintiff's purported "trade secrets" (purportedly giving rise to claims under the DTSA) (Complaint ¶¶ 126-27, 130, 133), and Plaintiff's purported "confidential information" (purportedly giving rise to claims under breach of the various Confidentiality Agreements) which the Complaint goes no further than defining as "trade secrets and other confidential information", and "confidential information and trade secrets" (Complaint ¶¶ 105-10), and as such the DTSA claim is fatally deficient. *GMH Cap. Partners v. Fitts*, 2025 WL 950674, at *8 (S.D.N.Y. Mar. 28, 2025) ("Here, GMH has not described the alleged trade secrets with sufficient specificity such that their protectability can be assessed and instead relies on broad categories of information which it refers to interchangeably as both trade secrets and confidential information throughout the complaint. The alleged trade secrets include its confidential communications with PAC, its strategic vision for the acquisition, its financial estimates, potential equity sources, site-visit reports, market analysis, university research, borrowing needs, pricing practices, techniques, sales methods, marketing strategies, return on investment calculations, and voluminous proprietary work product as to how the deal to acquire the PAC Portfolio could be closed and then managed efficiently in subsequent years. Notably, this is the same 'confidential information' that GMH alleges was disclosed in breach of the NDA, however, GMH does not identify any specific materials or documents or explain why these categories of information are trade secrets.") (citation modified).

However, "confidential materials are not synonymous with trade secrets." *Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*, 2025 WL 1827274, at *17 (S.D.N.Y. July 2, 2025); *Sapir*, 2021 WL 4482277, at *6. The conflation of the two concepts "does not assist the Court in discerning which subsets of this universe of documents are alleged to be trade secrets . . . . [and]

9

is fatal to Plaintiffs' claim [because] the Court cannot meaningfully assess the protectability of the documents described in the Complaint without first knowing which of the documents must be assessed for that protectability." *Sapir*, 2021 WL 4482277, at *6, *see also GMH*, 2025 WL 950674, at *8; and *Converged Compliance*, 2024 WL 4665114, at *9 ("Plaintiff has failed to plead which of these numerous categories of documents they describe in their complaint are trade secrets—as opposed to mere confidential or proprietary information. . . . Plaintiff inconsistently refers to such information as 'confidential information,' 'intellectual property,' and 'trade secrets,' conflating the concepts.") (citation modified).

Finally, even if the vague, general and conflated descriptions of the purported "trade secrets" were to contain sufficient detail, and they do not, most of the categories of documents would not merit trade secret protection under the DTSA because they were not secret, and do not rise to the level of protected trade secret. *Prysm*, 2025 WL 1827274, at *17 ("Courts dismiss trade secrets claims when the alleged trade secrets are not, in fact, secret."). *Prysm*, 2025 WL 1827274, at *17 ("Generally, information is not afforded trade secret protection if the information has been disclosed to others").[1]

The first two broad category of documents identified by Plaintiff are "financial and business information related to MMA, McGriff and the Marine Team" and "strategic plans" (Complaint ¶ 22). As a rule, documents concerning the intricacies of an internal business and marketing documents do not generally rise to the level of a trade secret. *Aira*, 2024 WL 1255798,

---

[1] Plaintiff concedes, though it attempts to shift the blame for its own lack of diligence to Southern, that there was at least some group of employees who had access to its purported "confidential information and trade secrets" but did not have restrictive covenants with Plaintiff (Complaint ¶¶ 51-52). It is hard to understand how Plaintiff can claim it took "affirmative measures to prevent others from acquiring . . . it or using' its purported "confidential information and trade secrets" (Complaint ¶ 129).

10

at *4-5; *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 97 (S.D.N.Y. 2022). Plaintiff makes no specific allegation that these internal business documents, whatever they may be, were not shared with third parties which is another reason that this category of information will not rise to the level of a trade secret. *Sapir*, 2021 WL 4482277, at *6 ("Given the fact that many of the documents described in Plaintiffs' Complaint were, by definition, shared with other parties, Plaintiffs' bare assertion that these documents are protected trade secrets is implausible—whether or not they were also stored on a secure database or governed by confidentiality agreements. *Cf. Pauwels v. Deloitte LLP*, 2020 WL 818742, at *5 (S.D.N.Y. Feb. 19, 2020) (plaintiff did not plead existence of trade secrets when he shared information with a third party without alleging a 'formal agreement' with that third party regarding the information's confidentiality or any limitations on who within or outside the third-party organization could see the information).").

Finally, other than the conclusory allegation that this information provides economic value because it is not known to others (Complaint ¶ 129), Plaintiff does not allege plausible facts to support its assertion that this category of information cannot be duplicated from public sources, or that it is based on proprietary formulas, nor does Plaintiff plausibly allege how such information derives independent economic value from not being known. Plaintiff therefore fails to sufficiently allege that this class of information is a trade secret. *GMH Cap. Partners v. Fitts*, 2025 WL 950674, at *9 (S.D.N.Y. Mar. 28, 2025) ("GMH also repeats the language of the DTSA, alleging that its 'trade secret information derives independent economic value from not being generally known to the public and not being readily ascertainable through proper means by others who could obtain economic value from the disclosure or use of the information.' However, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (quoting *Iqbal*, 556 U.S. at 678) (citation omitted)); *Aira*, 2024 WL 1255798, at *5;

11

*Garvey*, 634 F. Supp. 3d at 97 ("Defendants' bare-bones pleading is bereft of non-conclusory allegations that could demonstrate that its customer lists, pricing, and other general business information are trade secrets.").

The second general category of documents alleged by plaintiff to be a "trade secret" are those concerning their clients, more specifically, "non-public and commercially valuable client information," "databases compiling client and prospect information," and "information regarding the cost and revenue structure of client accounts and placements" (Complaint ¶ 22). Once again, these descriptions are woefully deficient in plausibly alleging any facts as to what these documents might consist of or what makes them a trade secret (Complaint ¶ 22), but, once again, even if this category of trade secrets had been properly detailed, and it has not, it does not rise to the category of a trade secret.

The client information is necessarily of the type that a client possesses as a result of being the client and as such consists of either information contained in Plaintiff's contracts with its clients or information known to Plaintiff's clients. *See, e.g., Dewitt Stern Grp. v. Eisenberg*, 257 F. Supp. 3d 542, 582 (S.D.N.Y. 2017) ("[I]nsurance account information such as policy information, expiration dates, terms and conditions, and pricing all belong to clients, not brokers."). There is no allegation in the Complaint that the clients were required to protect the secrecy of such information, and could not pass it on at will to any person, persons or group that they wished. This type of information does not qualify for trade secret protection. *Sapir*, 2021 WL 4482277, at *6 ("Yet another deficiency to Plaintiffs' trade secret allegations is that many of the documents listed in the Complaint—including all the loans, agreements, and other contracts—are documents that were necessarily shared with at least one other party. Disclosing a trade secret to others who are under no obligation to protect the confidentiality of the information ultimately extinguishes that property

12

right. Indeed, such documents could not have independent economic value, actual or potential, without being known by another person, namely, the other party or parties to the contract.") (citation modified).  Moreover, information concerning customer lists, contact information, customer preferences, customer pricing and revenues and similar internal business information without more specific factual information alleged to demonstrate that such information was not known or discoverable within the industry or to the public, or that the pricing, revenues, fees and commissions are based on proprietary formula or algorithm, do not rise to the level of a trade secret under any circumstances. *AutoExpo*, 2025 WL 2637493, at *12 ("[S]uch information is generally deemed to be a compilation of otherwise publicly available information and, therefore, a plaintiff seeking trade secret protection for this information must demonstrate a unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." (citation modified)); *Aira*, 2024 WL 1255798, at *4-5; *24 Seven, LLC v. Martinez*, 2021 WL 276654, at *7–8 (S.D.N.Y. Jan. 26, 2021).  The fact that such information may have been compiled into a database does not give such information protection that it does not otherwise merit. *Sapir*, 2021 WL 4482277, at *6.

Finally, "compilations of personnel information," which Plaintiff alleges consists of "their salaries, bonuses, skill, qualifications, abilities, key relationships and team structures" (Complaint ¶ 22) equally do not qualify as trade secrets.  Such information is known to Plaintiff's employees, and Plaintiff does not allege that its employees generally are prohibited from disclosing such information to third parties. *AutoExpo*, 2025 WL 2637493, at *13; *24 Seven,*2021 WL 276654, at *7–8.  This is especially true for employee compensation. *People v. Thain*, 874 N.Y.S.2d 896, 904 (Sup. Ct. N.Y. Co. 2009) (holding employee compensation information is not a trade secret because "there is no evidence that the intervenors have ever taken measures to prevent employees

13

from sharing compensation information with third parties or to enforce their purported privacy policies, either with respect to individual compensation or to employee compensation in the aggregate. . . . The employees can have had no reasonable expectation of privacy in this information, when they themselves are free to share it with third parties, and Bank of America's own privacy policy states that this information may be shared with the government.").

Plaintiff fails to sufficiently allege the existence of protectible trade secrets and thus the DTSA claims should be dismissed. *Aira*, 2024 WL 1255798, at *6.

## II. This Court Lacks Subject Matter Jurisdiction

### A  Plaintiff Fails to Allege Subject Matter Jurisdiction Under the DTSA

Federal District Courts are courts of limited subject matter jurisdiction. *Wynston Hill Cap., LLC v. Crane*, 628 F. Supp. 3d 540, 544–45 (S.D.N.Y. 2022). A party can generally invoke that jurisdiction in one of two ways: federal question jurisdiction which involves suits arising under federal law; or diversity jurisdiction for suits where the amount in controversy exceeds $75,000 and the litigants are citizens of different States. *Id.* A plaintiff must allege the existence and basis for subject matter jurisdiction in the complaint. *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010); *Brown v. HP Inc.*, 2019 WL 5551864, at *2 (S.D.N.Y. Oct. 25, 2019). Where the District Court lacks jurisdiction, it lacks authority to adjudicate the claims, and it must dismiss the case before it. *Yong*, 625 F.3d at 775; *Chenming Holdings (Hong Kong) Ltd. v. Sklarov*, 2025 WL 2695281, at *5 (S.D.N.Y. Sept. 22, 2025).

Here, Plaintiff alleges two grounds for primary subject matter jurisdiction before this Court one arising under federal question jurisdiction arising from its DTSA claim, and the other arising under diversity jurisdiction (Complaint ¶¶ 10-11). Plaintiff asserts supplemental jurisdiction for its State law claims, which it alleges form part of the same case or controversy as its federal DTSA claim (*id.*). However, as shown in the prior section, Plaintiff's DTSA claim fails,

and as such this Court lacks subject matter jurisdiction under federal question jurisdiction. *Aira*, 2024 WL 1255798, at *6; *Brown*, 2019 WL 5551864, at *2.

Plaintiff asserts diversity jurisdiction in the Complaint but fails to make out the allegations to support that assertion. *United States Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 411 (E.D.N.Y. 2020) ("[T]he Supreme Court made it clear that a litigant cannot gloss over the facts relating to citizenship and invoke the federal forum. If the litigant cannot find a definitive basis for alleging the citizenship of each defendant, then the case belongs in state court. As Chief Justice Marshall stated, 'the averment of jurisdiction shall be positive, [and] the declaration shall state expressly the fact on which jurisdiction depends. It is not sufficient that jurisdiction may be inferred, argumentatively, from its averments.' *Brown v. Keene*, 33 U.S. 112, 114, 8 L. Ed. 885 (1834)." (alteration in original)). It is Plaintiff's burden to affirmatively allege that complete diversity exists and failing to do so will lead to dismissal for lack of diversity jurisdiction. *Wynston Hill*, 628 F. Supp. 3d at 545.

Plaintiff fails to sufficiently allege the existence of diversity jurisdiction. Plaintiff alleges that it is a limited liability company but fails to allege facts demonstrating its own citizenship for purposes of diversity jurisdiction (Complaint ¶¶ 5-7). Indeed, it alleges no jurisdictional facts as to itself at all. *Id.* Plaintiff alleges that it is "organized and existing under the laws of the State of Delaware" and has a "principal place of business in White Plains, New York". *Id.* However, neither the state of formation of a limited liability company nor its principal place of business is determinative of its citizenship for diversity jurisdiction purposes and, instead, the plaintiff is required to allege the citizenship of each member of the limited liability company to determine the limited liability company's citizenship in order to demonstrate whether diversity jurisdiction

15

exists.[2] *McCarthy v. Butler Tibbetts, LLC*, 2021 WL 5450270, at *1 (S.D.N.Y. November 19, 2021) ("[A] limited liability company takes the citizenship of each of its members"). Plaintiff fails to adequately allege the existence of diversity jurisdiction because it does not allege the citizenship of its members. *Id.* at *2. Because the Court lacks both federal question and diversity jurisdiction, it must dismiss the case. *Wynston Hill*, 628 F. Supp. 3d at 545.

Given the lack of subject matter jurisdiction, this Court should decline to exercise supplemental jurisdiction over the remaining State law claims and the matter as a whole should be dismissed. *Nano Dimension Ltd. v. Murchinson Ltd.*, 681 F. Supp. 3d 168, 193 (S.D.N.Y. 2023) ("A district court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction. Courts consider the traditional values of judicial economy, convenience, fairness, and comity. Generally, where all federal-law claims are eliminated before trial, the balance of the factors will point toward declining to exercise jurisdiction over the remaining state-law claims.")); *Nachshen v. 53-55 W. 21st Owner LLC*, 2022 WL 704782, at *2 (S.D.N.Y. Mar. 9, 2022).

Given the early stage of this case, the deficient DTSA claim and the lack of subject matter jurisdiction, this Court should dismiss the state law claims. *Padula v. Dinsmore*, 2025 WL 950722, at *13 (D. Conn. Mar. 28, 2025); *Nano*, 681 F. Supp. 3d at 193 ("Here, the balance of factors weighs in favor of declining supplemental jurisdiction. Although the parties have submitted substantial filings in connection with the pending motions, the case is only at a nascent stage. No discovery has occurred, nor has the initial pretrial conference taken place. Moreover, the parties

---

[2] Likewise, if any of the members of the LLC are "themselves non-corporate entities, then a party must allege the identity and citizenship of their members, proceeding up the chain of ownership until the party has alleged the identity and citizenship of every individual and corporation with a direct or indirect interest in the LLC." *Patrick Cap. Markets, LLC v. Ascend Real Est. Partners, L.P.*, 2022 WL 294638, at *5 (S.D.N.Y. Feb. 1, 2022) (citation modified).

16

are litigating similar issues in other proceedings that predate this case. Accordingly, because the Court dismisses Plaintiff's Section 13(d) federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's non-federal claims." (citation modified)); *Aira*, 2024 WL 1255798, at *6.

### B  State Law Claims Predominate and There is No Reason for this Court to Maintain Supplemental Jurisdiction

Upon dismissing the sole federal DTSA claim, the Court should also dismiss the State law claims. Even if the DTSA claim were viable, and it is not, there is no basis for this Court to retain jurisdiction over this matter because the State law claims predominate over the DTSA claim. Given Plaintiff's failure to properly allege the well-established bases for diversity jurisdiction involving a limited liability company, it is credible to assume that Plaintiff is unable to makes such allegations and added a DTSA claim to the Complaint in an effort to bring this case in Federal Court.

The gravamen of all of Plaintiff's claims, including the DTSA claim, relies on the same duties alleged in the State law claims for breaching the various contracts between the parties.  As previously set forth, the DTSA claim conflates the concept of "confidential information" allegedly protected under the various confidentiality agreements with the notion of trade secrets (*see supra* at 8-10) and thus even if it was viable, and it is not, the essence of the DTSA claim and the essence of the State law claims for breach of the contract requiring non-disclosure of confidential information are the same (compare breach of contract, confidential information and trade secrets claim (Third Case of Action) Complaint ¶¶ 104-10, with the DTSA claim (Fifth Case of Action), Complaint ¶¶ 124-36).  While vague and conclusory, the DTSA claim alleges that Southern is using Plaintiff's "trade secrets to conduct business" while working for a "direct competitor" (Complaint ¶¶ 128, 130), which in itself, merely recapitulates the allegations of Plaintiff's state

17

law claims for non-solicitation of employees (First Cause of Action ¶¶ 57-59, 88), non-solicitation

of clients (Second Cause of Action ¶ 98), the breach of the Missouri Trade Secret Act (Fourth Case

of Action) stemming from solicitation of employees and clients and disclosure of confidential

information (Complaint ¶ 119); breach of duty of loyalty (Sixth Cause of Action) by soliciting

employees and clients and misusing confidential information (Complaint ¶ 142); and unfair

competition (Seventh Cause of Action) based on solicitation employees and clients and misuse of

confidential information (Complaint ¶ 149).

Thus, even if the DTSA claim survived, and it should not, it is merely peripheral to the

case. The State law claims are the heart of the case, and they predominate. *Dunlop v. City of New

York*, 2006 WL 2853972, at \*5 (S.D.N.Y. 2006) ("[S]tate law claims predominate when the federal

law claims are merely peripheral or cover a much narrower issue than the state law claims, or

where the factual or legal analysis of the claims are unrelated."). Thus, in *Oneida Indian Nation

v. Madison County*, all of plaintiff's federal claims were dismissed "with just one narrow

exception;" the Second Circuit determined that, "even if the existence of one narrow surviving

federal claim means that not all claims over which the district court has original jurisdiction have

been dismissed, it has nonetheless become clear that the state-law claims now substantially

predominate in this litigation." 665 F.3d 408, 439 (2d Cir. 2011) (citation modified). Citing to

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727(1966), the Second Circuit explained

that "[o]nce it appears that a state claim constitutes the real body of a case, to which the federal

claim is only an appendage, the state claim may fairly be dismissed." *Oneida*, 665 F.3d at 439.

Indeed, "[t]o the extent that the state law claims are more complex or require more judicial

resources to adjudicate, or are more salient in the case as a whole than the federal law claims, it

can be fairly said that the state law claims predominate." *UBS Sec. LLC v. Dondero*, 705 F. Supp. 3d 156, 168 (S.D.N.Y. 2023) (citation modified). Such is the case here.[3]

### III.  The Claims for Breach of Duty of Loyalty, and Unfair Competition Should Be Dismissed

Plaintiff asserts claims against Southern for breach of the duty of loyalty (Sixth Cause of Action), and Unfair Competition (Seventh Cause of Action). Each of these claims should be dismissed for failure to state a claim.

Each of these claims is merely a recapitulation of Plaintiff's claims for alleged breaches of contract and are duplicative of those claims and of each other. Plaintiff alleges Southern breached the faithless servant doctrine (Sixth Cause of Action) by allegedly soliciting employees and clients to leave Plaintiff (exactly what is alleged in the First and Second Causes of Action of the Complaint respectively for Breaches of Contract for Non-Solicitation and Non-Servicing of Employees and Clients) and by disclosing Plaintiff's confidential information to a competitor (exactly what is alleged in Third Case of Action for Breach of the Confidential Information and Trade Secrets Agreement) (*compare* Complaint ¶¶ 140-42 with Complaint ¶¶ 87-88 [breach of non-solicitation of employees], ¶¶ 97-98 [breach of non-solicitation of clients], and ¶¶ 107-08 [breach of non-disclosure agreement]). As for the unfair competition claim, Plaintiff alleges that Southern engaged in unfair competition by soliciting employees and clients, and by misusing (including

---

[3] Plaintiff attempts to draw a parallel between this case and another federal case against other defendants currently pending before Judge Daniels in the S.D.N.Y. (Complaint ¶¶ 34-35). However, Judge Daniels declined to accept this case as related to the *Parrish* action on November 4, 2025. Further, while, in the *Parrish* action, Judge Daniels did enter a preliminary injunction enforcing certain non-solicitation agreements against the defendants therein, he *declined* to enforce non-servicing provisions against those defendants. Marsh also fails to mention that it sought but did not obtain a preliminary injunction against Howden in Delaware state court. Finally, while Plaintiff baldly asserts that the obligations owed to Marsh by the defendants in front of Judge Daniels are "very similar" to those Plaintiff asserts against Southern herein, Plaintiff fails to allege any facts demonstrating such supposed "similarity," and Plaintiff's unsupported assertion need not be credited.

allegedly allowing the deletion of) confidential information.  The unfair competition claim is duplicative of the contract claims (*compare* Complaint ¶ 149 [unfair competition by soliciting employees and clients and misusing confidential information and trade secrets] with ¶¶ 87-88 [breach of non-solicitation of employees], ¶¶ 97-98 [breach of non-solicitation of clients], and ¶¶ 107-08 [breach of non-disclosure agreement]).  Where a contract governs the subject matter of a dispute between the parties, those claims are contractual in nature and cannot be recast as tort claims, as such, Plaintiff's claims for breach of duty of loyalty (Sixth Cause of Action), and Unfair Competition (Seventh Case of Action), should be dismissed as duplicative of the breach of contract claims.  *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, 2024 WL 4665114, at *12 (S.D.N.Y. Sept. 25, 2024).

## CONCLUSION

For the foregoing reasons, Southern respectfully submit that the Court should dismiss the Complaint in its entirety.

Dated:    New York, New York        **DORSEY & WHITNEY LLP**
          January 15, 2026


By    */s/ Jeremy E. Deutsch*
      Jeremy E. Deutsch
      Krista E. Bolles
      51 West 52nd Street
      New York, NY 10019
      (212) 415-9238
      deutsch.jeremy@dorsey.com
      bolles.krista@dorsey.com

      -and-

      Kathryn A. Johnson (pro hac vice)
      50 South 6th Street, Suite #1500
      Minneapolis, MN 55402

20

(612) 492-6613
johnson.kate@dorsey.com

*Attorneys for Defendant Charles Baxter Southern, III*

## CERTIFICATE OF WORD COUNT

As required by S.D.N.Y. Local Rule 7.1(c), I hereby certify that Defendant's Memorandum of Law In Support Of Defendant's Motion To Dismiss Plaintiff's Complaint contains 6,369 words, excluding the parts of the document that are exempted by rule.

Dated:  New York, New York
        January 15, 2026                */s/ Jeremy E. Deutsch*
                                        Jeremy E. Deutsch

1